IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| SHERYL E. DAVIS, | ) | CIVIL ACTION 4:11-cv-00197-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. Upon consent of the parties, this case was referred to the undersigned for the conduct of all further proceedings and the entry of judgment.

**I.  PROCEDURAL HISTORY**

Sheryl E. Davis ("Plaintiff" or "Claimant") filed an application for DIB and SSI on August 11, 2006, alleging inability to work since January 1, 2002. Her applications were denied at all administrative levels, and upon reconsideration. Plaintiff filed a request for a hearing. A hearing was held on January 14, 2009, before an Administrative Law Judge ("ALJ") at which the Plaintiff

appeared and testified along with a vocational expert (VE). Plaintiff's mother also testified during the hearing. The ALJ issued an unfavorable decision on March 30, 2009. (Tr. 20-29). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final decision. Plaintiff sought judicial review in this court by the filing of a complaint on January 25, 2011.

## II. FACTUAL BACKGROUND

The Plaintiff was born on December 8, 1976, and was 25 years old at the time of the alleged onset date. She has a limited education and past work as a cashier and housekeeper.

## III. DISABILITY BACKGROUND

The Plaintiff's arguments consist of the following, quoted verbatim:

    (1)    The ALJ performed a flawed Listing analysis; and

    (2)    The ALJ performed a flawed credibility analysis.

(Plaintiff's brief).

In the decision of March 30, 2009, the ALJ found the following:

    1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2009.

    2.    The claimant has not engaged in substantial activity since January 1, 2002, the alleged onset date (20 CFR 404.1571 *et. seq*. And 416.971 *et. seq*.).

    3.    The claimant has the following severe impairments: post-traumatic stress disorder (PTSD) and depression (20 CFR §§ 404.1521 *et seq.* and 416.921 *et seq*.).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to work involving application of short, simple instructions, with no hazardous conditions that would increase stress levels at work. The claimant is also to have no interaction with the public and only occasional interactions with co-workers and supervisors.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on December 8, 1976 and was 25 years old, which is defined as a younger individual, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has a limited education, is literate, and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416. 968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2002, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 22-29).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under

3

the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found disabled or not disabled at a step, further inquiry is unnecessary. If it can not be determined if an individual is disabled or not disabled at a step, further inquiry is necessary by advancing to the next step in the sequential evaluation. 20 C.F.R. § 404.1520(a); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if she can return to her past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

### IV.  ARGUMENTS AND ANALYSIS

**Credibility**

Plaintiff contends that the ALJ erred in his credibility assessment. Defendant argues the ALJ reasonably evaluated the credibility of Plaintiff's subjective complaints setting forth in his decision the proper standard for evaluating the credibility.

Under Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the factfinder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01, 34484-85.

The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989) (quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 61 Fed. Reg. at 34486.

A claimant's allegations about her pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment,

and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996). Additionally, "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994); see also Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) ("'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'" (citation omitted)); See Johnson, 434 F.3d at 658 (noting that claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints).

The ALJ considered and discussed the medical evidence, the medical records, Plaintiff's testimony, and the testimony of Plaintiff's mother in detail. He found at Craig's step one that Plaintiff had impairments capable of producing symptoms that she alleged. However, he found her allegations at step two not fully credible. He concluded that Plaintiff's subjective testimony as to the severity of her pain and limitations was not credible to the extent it was not consistent with the RFC found by the ALJ. The ALJ concluded as follows:

> The claimant testified she becomes anxious when around people. She also experiences panic attacks which cause her to "black out." During these episodes, she is not conscious of her actions but has damaged windows and a television. She also alleged flashbacks and nightmares. Although she is able to cook and clean, the claimant alleges that she experiences difficulty with concentration and memory such that she is able to focus on only one thing at a time. Although she is uncomfortable outside her home, she attends church.
>
> Melva Davis, the claimant's mother offered similar testimony regarding the claimant's symptoms and limitations, she added that the claimant is hypervigilant, cannot leave the house by herself, and does not get along with strangers.

(Tr. 25).

After discussing the medical records in detail, the ALJ concluded the following:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> In terms of the claimant's alleged PTSD and depression, these conditions are not disabling. Clinical notes from the claimant's previous psychiatrist, Amy Johnson, M.D., whom the claimant saw for approximately one year, do not support the claimant's allegations of erratic behavior including "black out" episodes. Rather, the claimant reported to Dr. Johnson that she was: "doing well," was going for walks, and had had no outbursts in April 2007. In March 2008, the claimant told Dr. Johnson that she did not require additional therapy. The claimant's file was closed in May 2008 because she did not appear for several scheduled appointments. She reported improvement in her symptoms with no side effects when her medications were altered to her present regimen. In October 2007 she reported that she was leaving her house more. In December 2007 she reported that she was attempting to make herself more independent from her parents. On several occasions, the claimant described her mood as good. This evidence does not support a finding that the claimant is precluded from engaging in all work activity. Moreover, the claimant's allegations regarding her erratic behavior and angry outbursts are not supported by the medical evidence of record, as these notes do not describe destruction of personal property or damage to her home, this inconsistently detracts from the claimant's credibility with respect to her symptoms and limitations.
>
> There is also evidence in the record that the claimant's failure to maintain continuous employment with one employer is due to factors other than her PTSD and depression. In February 2008 the claimant told Dr. Johnson that she had a criminal record which prevented her from obtaining certain jobs. (Exhibit 11F). She left another job after allegedly falling at work and injuring her back. (Exhibit 3F).

(Tr. 21).

After discussing the opinion evidence and what weight he accorded the medical evidence, the ALJ concluded as follows:

> In sum, the above residual functional capacity assessment is supported by the objective medical evidence in the record. The claimant identified no restrictions with respect to lifting, carrying, walking, standing or sitting, and none is found in the record. The claimant is able to cook, clean, and care for her personal grooming needs. Although she has difficulty in interacting with others, this limitation does not preclude all work activity.

> Although the claimant's allegations of debilitating depression and PTSD were not fully consistent with the record, the undersigned accorded the claimant the benefit of the doubt in limiting her to work involving adherence to short, simple instructions. Although her allegations of angry outbursts resulting in "black out" episodes and destruction of property were not fully consistent with the evidence, she is given the benefit of the doubt and is limited to work free of hazards that would increase her stress level. Considering her reports of anxiety when around unfamiliar people, she is restricted from contact with the public and only occasional contact with co-workers and supervisors. However, her allegation that she is incapable of all work activity cannot be found to be entirely credible because of significant inconsistencies with the record as a whole.

(Tr. 27-28).

The ALJ complied with Craig's two-step analysis and cited substantial evidence to support his finding that Plaintiff's subjective complaints were not entirely credible.[1]

**Listings Analysis**

Plaintiff argues that the ALJ failed to fully account for the symptoms associated with her Post Traumatic Stress Disorder (PTSD) in his listing analysis and failed to evaluate the combined effect of her mental impairments. (Plaintiff's brief, p. 8). Plaintiff argues there is ample evidence in the record to show that she experiences regular panic attacks and suffers from a constant sense of dread related to being abducted or attacked resulting in agoraphobic behavior. Also, she argues the ALJ made no "meaningful analysis of the combined effect" of her impairments. (Plaintiff's brief, p. 9).

---

[1] The court remains mindful that its review is focused on whether the ALJ's opinion is supported by substantial evidence and that its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

Defendant responds that the ALJ identified the relevant listed impairments: 12.04 (affective disorders) and 12.06 (anxiety disorders) and discussed the parts under each in comparison to the claimant's impairments. Moreover, Defendant argues that even assuming Plaintiff is correct that the ALJ's finding that "there is no evidence of generalized persistent anxiety; or persistent, irrational fear of a specific object or situations which results in a compelling desire to avoid the dreaded object....or recurrent severe panic attacks....occurring on the average of at least once a week" is error, it is harmless because she still did not meet the B or C criteria. Further, Defendant argues that the ALJ considered Plaintiff's impairments individually and in combination and specifically discussed the evidence supporting Plaintiff's anxiety attacks, depression, and PTSD. (Def.'s brief, p. 8-13).

A claimant's impairment meets a Listing if "it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." 20 C.F.R. § 404 .1525(c)(3). The impairment medically equals a Listing "if it is at least equal in severity and duration to the criteria of any listed impairment." Id. § 404.1526(a). If a claimant has a listed impairment, but: 1) does "not exhibit one or more of the findings specified in the particular listing, or" 2) exhibits "all of the findings, but one or more of the findings is not as severe as specified in the listing," the claimant's impairment is medically equivalent to the listing if the claimant has "other findings related to [his or her] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 404.1526(b)(1).

As set forth above, the ALJ found that Plaintiff did not meet or medically equal Listing 12.04 B or C. Listing 12.04 provides in pertinent part as follows:

12.04   Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

. . .

    And

B.     Resulting in at least two of the following:

    1.     Marked restriction of activities of daily living; or

    2.     Marked difficulties in maintaining social functioning; or

    3.     Marked difficulties in maintaining concentration, persistence, or pace; or

    4.     Repeated episodes of decompensation, each of extended duration;

    Or

C.     Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1.     Repeated episodes of decompensation, each of extended duration; or

    2.     A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3.     Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. § 404 Subpart P, App. 1.

The ALJ fully discussed Listing 12.04, paragraph B, and noted Plaintiff's mild restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation of extended duration. The ALJ determined that the requirements of paragraph B are not met because Plaintiff's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation of an extended duration. He further found that Plaintiff did not meet the C criteria of the Listing concluding that there was no "medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitations of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support" in addition to one of the remaining criteria of 12.04(C).

Listing 12.06 provides:

> 12.06 Anxiety Related Disorders: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.
>
> . . .
>
> And
>
> B. Resulting in at least two of the following:
>
>   1. Marked restriction of activities of daily living; or
>
>   2. Marked difficulties in maintaining social functioning; or
>
>   3. Marked difficulties in maintaining concentration, persistence, or pace; or

    4.  Repeated episodes of decompensation, each of extended duration.

Or

  C.  Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. § 404, Subpart P, App. 1.

  As with Listing 12.04, the ALJ found that Plaintiff did not satisfy the "paragraph B" or "paragraph C" criteria of 12.06. Although the ALJ did not specifically address section A of Listings 12.04 and 12.06, the court finds no support in the record that if he had discussed section A in detail, it would have changed the outcome. To meet either listing, Plaintiff must satisfy the A criteria <u>and</u> either the B criteria or the C criteria. Plaintiff fails to show the ALJ erred in finding that she did not meet Listing B or C of Listing 12.04 or Listing 12.06. The ALJ's analysis is supported by substantial evidence with regard to the Listings. Thus, it appears that the ALJ did not err, and if he did, the error was harmless. <u>See</u> <u>Robinson v. Astrue</u>, 2011 WL 4368396 (D.S.C. Sept. 19, 2011).

  Plaintiff argues that the ALJ made no "meaningful analysis of the combined effect" of her impairments. Specifically, Plaintiff argues that the ALJ did not "analyze the effect of her depression and agoraphobia on her activities of daily living" and did not "discuss the effect of her well-documented hypervigilance on her concentration and pace." Plaintiff cites to <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989) and <u>Hines v. Bowen</u>, 872 F.2d 56, 59 (4th Cir. 1989) in support of her argument. Plaintiff asserts that the ALJ found that she had moderate difficulties with the activities of daily living and with concentration, persistence and pace, and that she suffered from marked difficulties in social functioning. However, Plaintiff contends the ALJ erred in failing to discuss the effect of her well-documented hypervigilance on her concentration and pace and did not analyze the effect of her depression and agoraphobia on her activities of daily living.

The role of the federal judiciary in reviewing decisions made under the Social Security Act is limited. See 42 U.S.C. § 405(g). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence, Blalock, 483 F.2d at 775, and complies with controlling law, Myers v. Califano, infra. When a claimant has multiple impairments, the statutory and regulatory provisions require consideration of the combined effects of impairments regardless of whether any single impairment, if considered alone, would be sufficiently severe. 42 USC §423(d)(2)B); 20 CFR §404.1523; Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)(must "consider combined effect of impairments and not fragmentize them"); Hines v. Bowen, 872 F.2d 56, 59 (4th Cir. 1989). Furthermore, the ALJ "must adequately explain his or her evaluation of the combined effects of the impairments." Id. See Cook v. Heckler, 783 F.2d 1168, 1174 (4th Cir. 1986). The explanation must be adequate to show that the ALJ "considered the combined effect of the impairments so as to allow proper judicial review." Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir. 1985); see also Green v. Chater, 64 F.3d 657, 1995 WL 478032, *3 (4th Cir. 1995)(unpublished); see also McCartney v. Apfel, 28 Fed. Appx 277, 2002 WL 191573, *3 (4th Cir. 2002) (unpublished) (ALJ's analysis of medical records at step three rather than at step four was not error because the ALJ "need only review medical evidence once in his decision."). Whether or not the ALJ considers the impairments in combination is a question of application of correct law. Deference is given to factual findings supported by substantial evidence. However, factual findings reached by means of improper standards or misapplication of the law are not due this deference. See Coffman v. Bowan, 829 F.2d 514, 517 (4th Cir. 1987).

As set out above, the ALJ found in his decision that Plaintiff had the severe impairments of PTSD and depression, but that she did not have an impairment or a combination of impairments

listed in or medically equal to one listed in Appendix 1, Subpart. P, Regulation No. 4. (Tr.22-23).[2] Contrary to Plaintiff's argument, the ALJ discussed Plaintiff's testimony that she becomes anxious around people, experiences panic attacks, has flashbacks and nightmares, and has difficulty with concentration and memory. (Tr. 25). The ALJ discussed the conflicting medical evidence and resolved the conflicts. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989. Although the ALJ did not find Plaintiff's allegations completely credible as discussed above, he gave her "the benefit of the doubt in limiting her to work involving adherence to short, simple instructions." (Tr. 27). Also, even though the ALJ found that her allegations of angry outbursts resulting in "black out episodes and destruction of property" (tr. 27) were not fully consistent with the evidence, he again gave her the benefit of the doubt and "limited [her] to work free of hazards that would increase her stress level." (Tr. 27). Additionally, based on her report of anxiety when around unfamiliar people, the ALJ restricted her from contact with the public and only occasional contact with co-workers and supervisors. Therefore, the ALJ did in fact discuss and consider Plaintiff's problems contrary to Plaintiff's argument. As discussed above, the ALJ's credibility determinations involving these issues are supported by substantial evidence. The ALJ's decision accounted for Plaintiff's combination of impairments in determining that Plaintiff had the RFC to perform a full range of work at all

---

[2] The role of the federal judiciary in reviewing decisions made under the Social Security Act is limited. See 42 U.S.C. § 405(g). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. Blalock, 483 F.2d at 775. In order for a reviewing court to determine whether the Commissioner based a decision on substantial evidence, "the decision must include the reasons for the determination . . . " Green v. Chater, 1995 U.S.App. LEXIS 21970, *7, 1995 WL 478032 (4th Cir.1995) (citing Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir.1986)).

exertional levels but with the following nonexertional limitations: the claimant is limited to work involving application of short, simple instructions, with no hazardous conditions that would increase stress levels at work, and no interactions with the public and only occasional interaction with co-workers and supervisors. The ALJ stated that in determining the RFC, he had carefully considered the entire record and all symptoms and resolved the inconsistencies within the record. Furthermore, in the decision, the ALJ thoroughly discussed her impairments, the medical records, with due consideration to his findings on credibility and medical opinions in determining " ....the claimant's mental impairments considered singly and in combination , do not meet or medically equal the criteria of listings 12.04 and 12.06." (Tr. 23, 23-24).

The court finds the ALJ's discussion and analysis to be sufficient in this case to demonstrate that he considered Plaintiff's impairments individually and in combination. The ALJ made credibility determinations regarding the impairments cited by the Plaintiff, finding Plaintiff's claims not fully credible. Plaintiff in effect again challenges the credibility determinations. The decision includes sufficient findings regarding the combination of her impairments for the court to properly review the ALJ's conclusion on this issue. As stated above, the ALJ thoroughly discussed the medical evidence, made credibility determinations and weighed all of the evidence including medical opinions. This court's review is limited to determine whether the ALJ's decision includes proper legal conclusions and is supported by substantial evidence. Though a more thorough analysis may be necessary in some cases, there is substantial evidence to support the ALJ's decision in this case.

## V. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. <u>Richardson</u>, 402 U.S. at 390. As previously discussed, despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this Court concludes that the ALJ's findings are supported by substantial evidence. Therefore, it is ORDERED that the Commissioner's decision be AFFIRMED.

AND IT IS SO ORDERED.

<u>s/Thomas E. Rogers, III</u>
Thomas E. Rogers, III
United States Magistrate Judge

September <u>26</u>, 2012
Florence, South Carolina